Brian S. King, #4610
Brent J. Newton, #6950
Nediha Hadzikadunic, #15851
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com

Attorneys for Plaintiffs

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BRADLEY K., individually and on behalf of M. K. a minor,<br><br>Plaintiffs,<br><br>vs.<br><br>KAISER FOUNDATION HEALTH PLAN of WASHINGTON OPTIONS INC.,<br><br>Defendant. | COMPLAINT<br><br>Case No. 2:20-cv-00555 JCB |

Plaintiff Bradley K ("Bradley"), individually and on behalf of M. K. ("M.") a minor, through his undersigned counsel, complains and alleges against Defendant Kaiser Foundation Health Plan of Washington Options Inc. ("Kaiser") as follows:

## PARTIES, JURISDICTION AND VENUE

1. Bradley and M. are natural persons residing in Snohomish County, Washington. Bradley is M.'s father.

2. Kaiser is an insurance company headquartered in the state of Washington and was the insurer and claims administrator for the insurance plan providing coverage for the Plaintiffs ("the Plan") during the treatment at issue in this case.

1

3. The Plan is a fully-insured employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). Bradley was a participant in the Plan and M. was a beneficiary of the Plan at all relevant times. Bradley and M. continue to be participants and beneficiaries of the Plan.

4. M. received medical care and treatment at Open Sky Wilderness Therapy ("Open Sky") from October 18, 2017, to January 3, 2018, and Summit Preparatory School ("Summit") from January 5, 2018, to August 17, 2018. These are licensed treatment facilities which provide sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems. Open Sky has campuses in Utah and in Colorado, and Summit is located in Montana.

5. Kaiser denied claims for payment of M.'s medical expenses in connection with his treatment at Open Sky and Summit. This lawsuit is brought to obtain the Court's order requiring the Plan to reimburse Bradley for the medical expenses he has incurred and paid for M.'s treatment and to obtain appropriate equitable relief for violations of federal statutes.

6. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

7. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, and because Kaiser and Open Sky do business in Utah. Finally, in light of the sensitive nature of the medical treatment at issue, it is the Plaintiffs' desire that the case be resolved in the State of Utah where it is more likely their privacy will be preserved.

8. The remedies the Plaintiffs seek under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendant's violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

## BACKGROUND FACTS

### M.'s Developmental History and Medical Background

9. Prior to high school M. had historically been a high performer. He did well in school, and while he did have some anxiety, for the most part he was well adjusted. In November of 2016, M. broke his foot. He had to stop playing soccer and became very depressed. M. also started regularly missing school and by early 2017 he was missing the majority of his school days.

10. M. was diagnosed with depression and anxiety, he began outpatient therapy and started taking medication, and attempted interventions such as easier classes, late starts, and partial days, but this had little effect. M. was hospitalized after he attempted suicide via overdose.

11. M. engaged in acts of self-harm, and in April of 2017 he was again hospitalized following an incident where he cut himself. M. seemed to do better once summer started and he could take a break from his classes, but when he started school again in the fall, he once again refused to attend his classes and attempted suicide via overdose.

12. M. became extremely withdrawn. He only left his room to go to the bathroom, only ate after everyone else went to bed, and if anyone entered his room he would hide under a

blanket. M. became non communicative, he looked up ways to commit suicide on the internet, wrote a suicide note, and was twice caught with a belt wrapped around his neck. On a separate occasion Bradley caught M. hanging from a torn sheet M. had fashioned into a noose. M. said that being in his room under the covers and nonresponsive was the closest thing to death that he could get to. Bradley no longer felt that he was able to keep M. safe and enlisted a crisis transportation service to take M. to Open Sky.

**Open Sky**

13. M. was admitted to Open Sky on October 18, 2017.

14. Kaiser denied payment for M.'s treatment in a series of Explanation of Benefits ("EOB") statements under denial codes 004 and 3003 which stated:

> 004- PRIOR AUTHORIZATION WAS NOT OBTAINED FROM THE HEALTH PLAN.
>
> 3003- SEE "MENTAL HEALTH" IN THE BENEFITS DETAILS SECTION OF YOUR BENEFITS BOOKLET.

15. On August 22, 2018, Bradley submitted a level one appeal of the denial of payment for M.'s treatment at both Open Sky and Summit. He contended that Kaiser had not complied with its responsibilities under ERISA and had not, for instance, divulged the name and qualifications of its reviewers as it was required to do under the statute.

16. Bradley argued that M.'s treatment was a covered expense under the terms of the Plan. He asserted that Kaiser had partially denied care due to a lack of preauthorization, when no such requirement for residential treatment was listed "in the plain language of my plan document." He contended that in the section titled preauthorization, it stated that "Benefits do not require Preauthorization except as noted under Section IV." He stated

that residential treatment was not listed in Section IV as a service which required preauthorization.

17. He noted that M.'s mental health disorders were all legitimate conditions listed in the most recent version of the Diagnostic and Statistical Manual (DSM). He wrote that M.'s treatment was medically necessary and a covered benefit under the terms of the Plan.

18. He requested that in the event the denial was maintained that Kaiser provide him with a copy of all documents under which the Plan was operated, including all governing plan documents, the summary plan description, any insurance policies in place for the benefits he was seeking, any administrative service agreements that existed, the Plan's mental health and substance abuse criteria, the Plan's criteria for skilled nursing, inpatient rehabilitation, and hospice facilities, and any reports from any physician or other professionals regarding the claim. (collectively the "Plan Documents")

19. In a letter dated November 21, 2018, Kaiser upheld the denial of payment for M.'s treatment at Open Sky. The unnamed reviewer gave the following justification for the denial:

> …The initial determination is upheld. [M.]'s 2017 and 2018 Summary of Benefits states that inpatient mental health or substance abuse services will not be covered unless preauthorized. The services in question were billed as inpatient services and were not preauthorized. In addition, [M.]'s insurance contract states, 'Residential treatment and partial hospitalization programs must be provided at a hospital or facility that KFHPWAO[1] has approved specifically for the treatment of mental disorders. Open Sky Wilderness Therapy is not a facility that Kaiser Permanente has approved specifically for treatment of mental disorders. Also, according to [M.]'s insurance contract, 'Chemical dependency services must be provided at a KFHPWAO-approved treatment facility or treatment program. Open Sky Wilderness Therapy is not a facility that Kaiser Permanente has approved specifically for treatment of chemical dependency.

---

[1] Kaiser Foundation Health Plan of Washington Options, Inc.

> Additionally, according to [M.]'s insurance contract, wilderness therapy is an excluded service (not covered by any Kaiser Permanente plan) and is listed as an example of experimental or investigational therapies that are excluded from coverage. …
>
> Based on a review of the clinical information provided/available, Kaiser Permanente Clinical Review Criteria and Medical Necessity Criteria for admission to acute mental health residential level of care were met, while continued stay at acute mental health residential level of care were not met for the reasons described above. You would have met criteria continued stay [sic] at this level of care if you had ongoing thoughts of suicide, ongoing thoughts of harming others, mental health symptoms that could not be managed at a lower level of care. The services provided to you at [sic] continued stay residential care --- individual therapy, group therapy, medication management --- could have been effectively provided at a lower level of care.
>
> However, Kaiser Permanente is upholding the original denial decision contractually as 1) The inpatient services were not preauthorized. 2) Open Sky Wilderness Therapy is not a facility that Kaiser Permanente has approved specifically for treatment of mental disorders nor chemical dependency and 3) wilderness therapy is an excluded service. …

20. On March 1, 2019, Bradley requested that the denial of M.'s treatment at Open Sky be evaluated by an external review agency. Bradley requested that the external review agency comply with the Uniform Health Carrier External Review Model Act, which, among other things, required that reviewers be physicians or other appropriate health care providers with an expertise in the covered person's medical condition. He requested that the reviewer be a board-certified psychiatrist with a subspecialty in treating individuals with mental health conditions similar to M.'s diagnoses.

21. Bradley wrote that the criteria utilized by Kaiser required an individual to exhibit acute symptomology in order to qualify for treatment at a subacute level of care. He contended that this was inconsistent with generally accepted standards of medical practice and encouraged the reviewer to rely on the Plan's definition of medical necessity instead of Kaiser's more restrictive acute residential criteria.

22. Bradley pointed out that Kaiser's denial letter referenced "acute mental health residential treatment care" and he reiterated that it was inappropriate to evaluate subacute residential treatment under an acute standard. He contended that this practice violated "both generally accepted standards of medical practice and federal mental health parity law."

23. He again stated that the plan provisions for residential treatment care contained no requirement that services needed to be preauthorized. He conceded that Kaiser had supplemental language to this effect, but that "the terms and conditions of my plan supersede any supplemental language found in Kaiser's generic summary."

24. Bradley noted that M. primarily received treatment for his mental health condition and not for a chemical dependency problem, and so Kaiser's statement that Open Sky was not a facility approved for chemical dependency treatment was not applicable. Instead he argued that Open Sky should have been evaluated according to the Plan's mental health criteria.

25. He contended that Open Sky was a licensed treatment facility and that it satisfied the Plan's requirements for care to be approved. He stated that he had reviewed the Plan's general exclusions and mental health exclusions sections and could find no exclusion for "wilderness therapy" services, nor was the term defined anywhere in the Plan.

26. Bradley contended that M.'s treatment was medically necessary and was rendered at the most appropriate level of care under which it could be safely and effectively provided. Bradley shared articles from the American Academy of Child & Adolescent Psychiatry and the U.S. Surgeon General's office, and argued that these showed that M.'s treatment was medically necessary and clinically appropriate. He wrote that M.'s repeated suicide

attempts demonstrated that outpatient treatment was insufficient to properly treat M. He again requested to be provided with a copy of the Plan Documents.

27. In a letter dated March 28, 2019, the external review organization upheld the denial of payment for M.'s residential treatment. The reviewer was not identified other than as a practicing attorney out of Washington State with in-depth health insurance knowledge.

28. The reviewer listed the Plan's criteria for chemical dependency and its criteria for mental health. The reviewer then wrote in part:

> …In the current matter from 10/18/17 to 01/03/18 the member received Wilderness Therapy services/inpatient mental health and/or substance abuse services from Open Sky Wilderness. While the member's position is recognized, the Plan language as set forth above is clear regarding coverage of the services in question. More specifically, "Experimental or investigational therapies, such as wilderness therapy" are specifically excluded. [2]
>
> Given the clear plan language, this reviewer can only conclude that the insurer did correctly administer the terms of the plan contract. …

The reviewer appears to have made no attempt to address Bradley's assertion that Kaiser's denial violated MHPAEA.

**Summit**

29. M. was admitted to Summit on January 5, 2018, based on the recommendation of M.'s treatment team at Open Sky.

30. As noted above in paragraphs 14-18, Kaiser denied payment for M.'s treatment at Open Sky and Summit in a series of EOB statements and then on August 22, 2018, Bradley appealed the denial of payment for both Open Sky and Summit.

---

[2] While the chemical dependency section cited by the reviewer contains the language "Exclusions: Experimental or investigational therapies such as wilderness therapy…" this exclusion is only present in the chemical dependency portion of the policy, the mental health section of the policy contains no such language. M.'s treatment was principally for mental healthcare and was not primarily based on chemical dependency.

8

31. In a letter dated November 21, 2018, Kaiser upheld the denial of payment for M.'s treatment at Summit. The letter is largely identical to the Open Sky denial letter of the same date mentioned above, and the majority of the text between the two letters is the same. The biggest substantive difference between the two letters is that the Summit denial does not mention wilderness treatment and instead states that "'facilities and treatment programs which are not certified by the Department of Social Health Services or which are not listed in the Directory of Certified Chemical Dependency Services in Washington State' are excluded from coverage."

32. In a letter dated March 1, 2019, Bradley requested that the denial of coverage for M.'s treatment at Summit be evaluated by an external review agency. Bradley asked that the reviewer not utilize the acute criteria that Kaiser had heretofore utilized to evaluate M.'s subacute care. Bradley reiterated that to do so was inconsistent with generally accepted standards of medical practice.

33. Bradley expressed frustration that Kaiser had not responded to many of the arguments he had raised in the appeal process. He contended that Summit was a licensed residential treatment facility and met all of the Plan's requirements for a residential treatment facility.

34. He took issue with Kaiser's statement that "Summit Preparatory School is not on the list of Children's/Adolescent Residential Treatment Facilities for Montana" He stated that he had been unable to find any such list, but in any event Kaiser's exclusion wasn't applicable as the State of Montana licensed and recognized Summit as a residential treatment center.

35. Bradley expressed concern at Kaiser's use of acute dangerousness as a justification to deny M.'s residential treatment. He asserted that Kaiser did not require patients to exhibit acute symptomology in order to qualify for skilled nursing care, and in fact prohibited individuals with acute medical problems from receiving skilled nursing care. Bradley contended that this constituted a violation of MHPAEA.

36. Bradley included a letter of medical necessity dated November 7, 2017, from Kevin Gonzalez Boas, Ph.D. which stated in part:

> Following his completion of the program at Open Sky, it is recommended that [M.] attend a specialized program that will be able to address his therapeutic needs and one that would include a supportive residential academic environment that can address his social-developmental needs. … At the present time, [M.] lacks the emotional resources needed to return to his home environment and requires the support that can be offered in a live-in academic environment where he can receive ample structured social and therapeutic support and prosocial opportunities facilitated by appropriately trained staff… Outside of a structured environment, [M.] is at high risk for a worsening of his emotional and behavioral problems.

37. Bradley again requested to be provided with a copy of the Plan documents.

38. In a letter dated March 27, 2019, the external reviewer upheld the denial of payment. The unnamed reviewer wrote that pre-authorization was not obtained and that there was no indication that Summit was an approved facility for the treatment of mental disorders. The reviewer indicated that M. did not meet the criteria for residential acute behavioral health "as there is lack of documentation that the patient's risk or severity of health disorder was appropriate for the proposed level of care…"

39. The reviewer stated that they reviewed the Kaiser 2018 benefits booklet which stated that some services require preauthorization, the Plan only covers services which are medically necessary, mental health services are provided at the most clinically appropriate and medically necessary level of care, and mental health and chemical dependency services

must be provided at a licensed facility approved by Kaiser. The reviewer determined that no preauthorization was obtained and Summit was not approved by Kaiser for the treatment of mental disorders. In addition, no pre-admission screening was conducted.

40. The reviewer concluded by stating:

    Admission Guidelines for Residential Acute Behavioral Health: Level of Care, Child or Adolescent, from MCG Health, Behavioral Health Guidelines, 22nd edition, identifies that admission is indicated due to ALL of the following–patient risk or severity of health disorder is appropriate to proposed level of care, is damage to self for child or adolescent, [sic] danger to others, has behavioral health disorder with moderately severe psychiatric, behavioral or other comorbid conditions, has serious dysfunction in daily living.

    Based on the discharge summary from Open Sky dated 01/03/18, and the individual psychotherapy treatment notes provided from Summit Preparatory School, there is no evidence that the patient's condition met the listed criteria.

41. The Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.

42. The denial of benefits for M.'s treatment was a breach of contract and caused Bradley to incur medical expenses that should have been paid by the Plan in an amount totaling over $87,000.

43. Kaiser failed to produce a copy of the Plan Documents, including the medical necessity criteria for mental health and substance use disorder treatment and for skilled nursing or rehabilitation facilities in spite of Bradley's request.

## FIRST CAUSE OF ACTION

**(Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))**

44. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Kaiser, acting as agent of the Plan, to "discharge [its] duties in respect to claims

processing solely in the interests of the participants and beneficiaries" of the Plan. 29 U.S.C. §1104(a)(1).

45. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with the Plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

46. The denial letters produced by Kaiser do little to elucidate whether Kaiser conducted a meaningful analysis of the Plaintiffs' appeals or whether it provided them with the "full and fair review" to which they are entitled. Kaiser failed to substantively respond to the issues presented in the Plaintiffs' appeals and did not meaningfully address the arguments or concerns that the Plaintiffs raised during the appeals process.

47. Kaiser's reviewers partially relied on an exclusion for wilderness programs found only in the chemical dependency section of the Plan to evaluate the mental health treatment provided at Open Sky. While Open Sky offers treatment to some individuals with drug and alcohol problems, it would be inaccurate to categorize it as a chemical dependency program. In addition, this section of the Plan excludes wilderness therapy without defining the term. Open Sky offers a rigorous, evidence-based program and is licensed by the State of Colorado to provide therapeutic services at a sub-acute inpatient level of care.

48. Kaiser and the agents of the Plan breached their fiduciary duties to M. when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in M.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of M.'s claims.

49. The actions of Kaiser and the Plan in failing to provide coverage for M.'s medically necessary treatment are a violation of the terms of the Plan and its medical necessity criteria.

## SECOND CAUSE OF ACTION

### (Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3))

50. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA.

51. Generally speaking, MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

52. MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and also makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

53. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity, restrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A) and (H).

54. Specifically, the Plan's medical necessity criteria for intermediate level mental health treatment benefits are more stringent or restrictive than the medical necessity criteria the Plan applies to intermediate level medical or surgical benefits.

55. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for M.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities. For none of these types of treatment does Kaiser exclude or restrict coverage of medical/surgical conditions in the manner Kaiser excluded coverage of treatment for M. at Open Sky and Summit.

56. In its review of M.'s claims, Kaiser's reviewers improperly utilized acute medical necessity criteria to evaluate the non-acute treatment that M. received, in spite of Bradley's repeated objections. Kaiser's improper use of acute inpatient medical necessity criteria is revealed in Kaiser's denial letters which give statements such as its claim that M. would have satisfied the Plan's continued stay criteria "if you had ongoing thoughts of suicide, ongoing thoughts of harming others, [or] mental health symptoms that could not be managed at a lower level of care." This improper use of acute inpatient criteria was a nonquantitative treatment limitation that cannot permissibly be applied to evaluate the sub-acute level of care that M. received.

57. The Plan does not require individuals receiving treatment at sub-acute inpatient facilities for medical/surgical conditions to satisfy acute medical necessity criteria in order to receive Plan benefits. To do so, would violate not only the terms of the insurance contract, but also generally accepted standards of medical practice.

58. The treatment provided in an acute inpatient setting is necessarily distinct from treatment provided in a non-acute inpatient setting. Utilizing acute criteria to evaluate a non-acute claim will result in a near universal denial of benefits, regardless of the medical necessity, clinical appropriateness, or nature of the treatment.

59. In summary, as enumerated above in paragraph 40, Kaiser utilized "Admission Guidelines for Residential *Acute* Behavioral Health: Level of Care, Child or Adolescent" (emphasis added) to determine the medical necessity of a sub-acute level of care. This is an impermissible treatment limitation, is contrary to generally accepted standards of medical practice, and a violation of MHPAEA. This is because Kaiser does not require its insureds to be in acute distress in order for their skilled nursing or other intermediate level medical or surgical care to be approved. However, as shown by how it characterizes its own medical necessity criteria, it regularly does so for residential treatment.

60. Kaiser discriminates against residential treatment in other ways as well. For instance, the Summary Plan Description contains a section titled "Benefits Details" where it provides information about covered Plan benefits. Under the heading "Mental Health" the document states in part:

> Inpatient mental health services, Residential Treatment and partial hospitalization programs must be provided at a hospital or facility that Group Health has approved specifically for the treatment of mental disorders. Chemical dependency services are covered subject to the Chemical Dependency services benefit.

No similar requirement is listed in the sections for analogous medical or surgical services such as inpatient rehabilitation or skilled nursing care. Under the terms of the Plan, individuals treated at inpatient rehabilitation and skilled nursing facilities obtain benefits for that care if those facilities are licensed under state law to provide inpatient rehabilitation or skilled nursing services. This creates a disparity that violates MHPAEA.

61. The actions of Kaiser and the Plan requiring conditions for coverage that do not align with medically necessary standards of care for treatment of mental health and substance use disorders and in requiring accreditation above and beyond the licensing requirements for state law violate MHPAEA because the Plan does not impose similar restrictions and

coverage limitations on analogous levels of care for treatment of medical and surgical conditions.

62. When Kaiser and the Plan receive claims for intermediate level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice. Kaiser and the Plan evaluated M.'s mental health claims using medical necessity criteria that deviate from generally accepted standards of medical practice. This process resulted in a disparity because the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

63. In this manner, the Defendant violates 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the medical necessity criteria utilized by the Plan and Kaiser, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

64. Kaiser and the Plan did not produce the documents the Plaintiffs requested to evaluate medical necessity and MHPAEA compliance, nor did they address in any substantive capacity the Plaintiffs' allegations that Kaiser and the Plan were not in compliance with MHPAEA.

65. The violations of MHPAEA by Kaiser and the Plan give the Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

(a)  A declaration that the actions of the Defendant violate MHPAEA;

 (b) An injunction ordering the Defendant to cease violating MHPAEA and requiring compliance with the statute;

 (c) An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendant to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

 (d) An order requiring disgorgement of funds obtained by or retained by the Defendant as a result of its violations of MHPAEA;

 (e) An order requiring an accounting by the Defendant of the funds wrongly withheld from participants and beneficiaries of the Plan as a result of the Defendant's violations of MHPAEA;

 (f) An order based on the equitable remedy of surcharge requiring the Defendant to provide payment to the Plaintiffs as make-whole relief for their loss;

 (g) An order equitably estopping the Defendant from denying the Plaintiffs' claims in violation of MHPAEA; and

 (h) An order providing restitution from the Defendant to the Plaintiffs for their loss arising out of the Defendant's violation of MHPAEA.

66. In addition, Plaintiffs are entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

WHEREFORE, the Plaintiffs seek relief as follows:

1.  Judgment in the total amount that is owed for M.'s medically necessary treatment at Open Sky and Summit under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

//

2. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiffs' Second Cause of Action;

3. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

4. For such further relief as the Court deems just and proper.

DATED this 3rd day of August, 2020.

By     s/ Brian S. King
        Brian S. King
        Attorney for Plaintiffs

County of Plaintiffs' Residence:
Snohomish County, Washington.